IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE RS FIT NW, LLC, | : | Chapter 11 |
| | : | |
| Reorganized Debtor. | : | Case No. 20-11568 (KBO) |
| | : | |
| RHONDA HUDSON, | : | |
| | : | |
| Appellant, | : | |
| v. | : | |
| | : | |
| RS FIT NW, LLC, | : | Civ. No. 24-448 (GBW) |
| | : | |
| Appellee. | : | |

**MEMORANDUM**

Rhonda Hudson, *pro se* appellant.

Ryan Preston Dahl, Eric M. Sherman, ROPES & GRAY, LLP, New York, NY; Laura Davis Jones, Timothy P. Cairns, Peter J. Keane, PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE – Counsel for appellee, RS FIT NW, LLC.

March 17, 2025
Wilmington, Delaware

**WILLIAMS, U.S. DISTRICT JUDGE:**

This dispute arises out of the chapter 11 cases of 24 Hour Fitness Worldwide, Inc. ("24 Hour Fitness") and its debtor affiliates (collectively, the "Debtors") in connection with three proofs of claims filed by *pro se* appellant Rhonda Hudson (the "Appellant" or "Hudson") asserting claims against the Debtors for wages and commission that she is allegedly owed by 24 Hour Fitness, as her former employer, together with a claim that she was denied these wages and commission based on her former employer's discriminatory practices. Appellant appeals the Bankruptcy Court's March 27, 2024 Memorandum Order (Bankr. D.I. 861)[1] (the "Disallowance Order") which (1) denied Appellant's motion for summary judgment on her claims, (2) sustained the Debtors' objection to the claims, and (3) disallowed Appellant's claims in their entirety. In connection with this appeal, Appellant has filed a motion seeking to compel discovery (D.I. 28) (the "Motion to Compel") For the reasons set forth herein, the Court will deny the Motion to Compel and affirm the Disallowance Order.

## I. BACKGROUND

### A. The Parties and the Chapter 11 Cases

From July 10, 2008 to June 11, 2020, Appellant worked as an employee at a fitness club located in New York City (the "Club"), owned and operated by the Debtor. (A000287-A000290 (the "Healon Declaration") ¶ 4.)[2] During most of her time there, Appellant held the position of "Service Representative Night" and covered the overnight shift from 10:00 p.m. to 6:00 a.m.,

---

[1] The docket of the chapter 11 cases, captioned *In re RS Fit NW, LLC*, No. 20-1158-KBO (Bankr D. Del.), is cited herein as "Bankr. D.I. __."
[2] The appendix (D.I. 23) filed in support of Appellees' answering brief is cited herein as "A__."

1

working the front desk of the Club where she facilitated the check in process and responded to service-related issues. (*Id.*; A000317-A000320.)

On June 15, 2020 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code and were authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of title 11 of the Bankruptcy Code. On August 24, 2020, the Bankruptcy Court entered the *Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim by Governmental Units, (III) Establishing a Bar Date to File Requests For Payment of Postpetition Administrative Claims, (IV) Establishing an Amended Schedules Bar Date, (V) Establishing a Rejection Damages Bar Date, (VI) Approving the Form and Manner for Filing Proofs of Claim, (VII) Approving the Proposed Notice of Bar Dates, (VIII) Approving Procedures with Respect to Service of the Proposed Notice of Bar Dates, and (IX) Granting Related Relief* which, among other things, established October 2, 2020 at 5:00 p.m. (prevailing Eastern Time), as the deadline to file proofs of claim for persons or entities, not including Governmental Units as defined in section 101(27) of the Bankruptcy Code (the "General Bar Date") and proof of claim forms to be served on, among others, the Debtors' known creditors and other known parties in interest as of the Petition Date. (A000003, A0000010.)

### B. Appellant's Proofs of Claim

On August 25, 2020, Appellant filed proof of claim no. 9404 asserting (i) a general unsecured claim in the amount of $265,881.52, and (ii) a priority non-tax claim in the amount of $13,650.00, for an aggregate amount of $279,531.52, on account of alleged accrued but unpaid split shift pay throughout the course of the Appellant's employment with the Debtor (the "Split Shift Claim"). (A000032-A000037.)

2

On October 1, 2020, the Appellant filed proof of claim no. 24973 asserting (i) a general unsecured claim in the amount of $283,728.96, and (ii) a priority non-tax claim in the amount of $13,650.00, for an aggregate amount of $297,378.96, on account of alleged accrued but unpaid commission from sales of the Club's membership throughout the course of Appellant's employment with the Debtor (the "Sales Commission Claim") and alleged unpaid compensation for the work day on January 23, 2016 when the Club was closed due to a snowstorm (the "Disaster Pay Claim"). (A000075-A000079.)

On December 14, 2020, after the General Bar Date, Appellant filed proof of claim no. 27128, asserting a general unsecured claim in the amount of $8,000,000.00 on account of damages for alleged discrimination based on sex, sexual orientation, race, and age (A000121-A000126) (the "Discrimination Claim" and, together with the Split Shift Claim, the Sales Commission Claim, and Disaster Pay Claim, the "Hudson Claims").

### C.   The Plan of Reorganization

On December 30, 2020, the *First Amended Joint Chapter 11 Plan of Reorganization of 24 Hour Fitness Worldwide, Inc. and its Affiliated Debtors* (A000148-A000249) (the "Plan") became effective. (*See* A000250-A000252.)

### D.   Appellant's Summary Judgment Motion

Thereafter, RS FIT NW, LLC and All Day Holdings LLC (the "Reorganized Debtor") negotiated with Appellant to resolve the Hudson Claims. On August 7, 2023, Appellant filed a motion for summary judgment (A000266-A000273) (the "Summary Judgment Motion"). Appellant asserted that the Debtors displayed (i) false pretenses, false representations, or actual fraud; (ii) fraud while acting in a fiduciary capacity; and (iii) willful malicious injury. Appellant further requested full payment of the Hudson Claims, notwithstanding that the Plan providing that

payments on account of general unsecured claims less than $400,000 receive a distribution of 1% in cash. (A000177.) On August 21, 2023, the Reorganized Debtor filed a *Response to Motion for Summary Judgment and Objection to Proofs of Claim Nos. 9404, 24973, and 27128*, asserting that the Hudson Claims and Summary Judgment Claims should be disallowed on procedural and substantive grounds (the "Claims Objection"). (A000274-A000286.) The Reorganized Debtor also filed the Declaration of Katie Healon, the Senior Director of Treasury and Pay Process for 24 Hour Fitness, in support of its response to the Summary Judgment Motion and the Claims Objection. (A000287-A000290.)

At a status conference on the Summary Judgment Motion and Claims Objection, the Bankruptcy Court explained to Appellant that the Reorganized Debtor had offered to allow her claims in their full amount and in the classifications that she had asserted, and that, if such a settlement were accepted, she would receive the recovery on her claims that is provided by the confirmed Plan. (*See* A000361-A000391 ("1/22/24 Tr.") at A000369-A000380). Appellant asserted that the Reorganized Debtor should not have the benefit of bankruptcy protections, based on its conduct, and that her claims were unique. (A000371-000374). The Bankruptcy Court carefully explained to Appellant that she was challenging the Plan discharge, that her argument that her claims should be treated differently than those of similarly situated creditors was a "potential uphill battle," and that if she moved ahead with an evidentiary hearing, "the debtor's offer to allow your claims in full will be removed from the table, and they will be pursuing their complete disallowance of your claims." (A000379.)

Appellant chose not to accept the settlement and chose to move forward with an evidentiary hearing, which was held on February 27, 2024. (*See* A000395-A000441 ("2/27/24 Tr.")).

4

Appellant had the opportunity to cross-examine Katie Healon but did not, and the Healon Declaration was entered into evidence without objection. (A000444.)

On March 24, 2024, the Bankruptcy Court issued the Disallowance Order, sustaining the Claims Objection, denying Appellant's Summary Judgment Motion, and disallowing the Hudson Claims in their entirety. As a threshold matter, the Bankruptcy Court noted that, "[f]rustrated by the Reorganized Debtor's failure to pay her claims, Claimant filed the [Summary Judgment Motion] to have the Court consider the allowance and payment of her claims," but "the Court finds the Summary Judgment Motion procedurally incorrect." (Disallowance Order at 3.) As the Bankruptcy Court explained:

> 11 U.S.C. § 502(a) provides that "[a] claim . . ., proof of which is filed under section 501 [of the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." Once an objection is filed, the Court is then empowered by section 502(b) to determine whether to allow the disputed claim and in what amount. The confirmed plan and several subsequent orders of the Court set the deadline by which the Reorganized Debtor must file objections to proofs of claims asserted in the bankruptcy cases. That deadline has not yet expired. Therefore, the Reorganized Debtor's Claims Objection is timely and properly put before the Court the disputes with respect to the allowance of the Hudson Claims. The Court will deem Claimants' Summary Judgment Motion and related submissions as if a response to the Claims Objection.

*Id.* (footnotes omitted). On the merits of the Hudson Claims, the Bankruptcy Court found that "[a]fter considering the parties' arguments, the witness testimony, and the documentary submissions of [Appellant], the [Bankruptcy Court] concludes that there is no legal basis for the Hudson Claims." (*Id.*)

### E. The Appeal, Stay Motion, and Motion to Compel

On April 10, 2024, Appellant filed a timely notice of appeal with respect to the Disallowance Order. On April 19, 2024, Appellant filed a motion for stay of the Disallowance

Order pending appeal. On May 23, 2024, following briefing and a hearing, the Bankruptcy Court denied the stay motion.

On October 14, 2024, after Appellant and Appellee had each filed their opening briefs in this appeal, Appellant served Appellee with a *Notice of Intent to Serve Subpoena* (the "Subpoena"). An affidavit of service of the Subpoena was filed in the Bankruptcy Court. (Bankr. D.I. 942.) On October 28, 2024, the Reorganized Debtor responded to the Subpoena, stating that the Subpoena was procedurally and substantively invalid because, among other things, the matter is on appeal and the record on appeal has already been determined. (D.I. 28-1 at page 15 of 15.) On November 4, 2024, Appellant filed the Motion to Compel in this Court, seeking "full and complete discovery responses."

The merits of this appeal are fully briefed. (D.I. 19, 22, 32.) The Motion to Compel is also fully briefed. (D.I. 28, 29, 33, 34.) No party requested oral argument.

## II. JURISDICTION AND STANDARD OF REVIEW

District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). "An order allowing or disallowing a claim is a final, appealable order." *In re Prosser*, 388 F. App'x 101, 102 n.1 (3d Cir. 2010) (quoting *Orsini Santos v. Mender,* 349 B.R. 762, 768 (1st Cir. BAP 2006)). This Court "review[s] the bankruptcy court's legal determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof." *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998). "Abuse of discretion is found where a 'court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.'" *Id.* at 686 (citing *Int'l Union Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987). Finally, "[Appellant] proceeds *pro se*, and accordingly, we construe [Appellant's]

pleadings liberally." *See Laughlin v. Peck,* 552 Fed. App'x 188, 190 (3d Cir. 2014) (citing *Haines v. Kerner,* 404 U,S. 519, 520-21 (1972)).

### III.  ANALYSIS

#### A.  The Motion to Compel Must Be Denied

Under the Federal Rules of Civil Procedure, a party that wishes to enforce a subpoena must file a motion to compel the subpoena before the court for the district where compliance is required. Fed. R. Civ. P. 45(d)(2)(B)(i). Here, the Subpoena was issued through the Bankruptcy Court and, accordingly, the Bankruptcy Court is the appropriate venue for any motion which compels compliance with the Subpoena. By virtue of the District Court's lack of jurisdiction over the Subpoena, and therefore the Motion to Compel, the only result can be denial of the relief requested in the Motion to Compel. Rule 45(a)(2) of the Federal Rules of Civil Procedure further requires that "[a] subpoena must issue from the court where the action is pending." There is, however, no pending action in the Bankruptcy Court because this contested matter is currently on appeal.

Even if service of the Subpoena was procedurally appropriate, discovery at the appellate stage is improper. Rule 8009 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") outlines the method for creating the record on appeal and does not include new discovery. Bankruptcy Rule 8009(a)(1) requires appellants to file a designation of the items to be included in the record on appeal and a statement of the issues to be presented. Fed. R. Bankr. P. 8009(a)(1). Consistent with Bankruptcy Rule 8009(a)(1), appellate review is limited to the record as it existed in the bankruptcy proceeding and as designated by Appellee's timeline record on appeal. Here, the factual record on appeal has been established, and while Bankruptcy Rule 8009(e)(1) allows the record to be corrected or modified, it does not permit additional discovery on appeal. Fed. R. Bankr. P. 8009(e)(1).

Appellant argues that the Reorganized Debtor's "suggestion that the appellant had a previous opportunity to clarify and or prove her claim through questioning the only appellee company party to the case, Katie Healon, is nonsensical," because "Ms. Healon's claims and position entered into the court via affidavit were already disproved by the evidence provided from company records provided to the court by the appellant," including "witness testimonies, certified statements, [and] affidavits, that supported the appellant's claims" and "contradicted Ms. Healon's affidavit." (D.I. 33 at 2.) That the Bankruptcy Court disagreed with Appellant's view of the evidence does not support Appellant's argument that she lacked the opportunity to develop the factual record, including by cross-examining Ms. Healon. Appellant further argues that Debtors failed to comply with her Subpoena. (D.I. 28 at 2.) Appellant, however, concedes that the Subpoena was served on October 14, 2024, months after the factual record had closed and the Disallowance Order was entered. (*See id.*) Appellant's Motion to Compel seeks to expand the already-established record on appeal through additional discovery, contrary to the Bankruptcy Rules, and accordingly must be denied.

### B.    The Split Shift Claim

Under New York law, an employee is entitled to receive one additional hour of pay at the minimum wage "for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is split shift; or (c) both situations occur." N.Y. Comp. Codes R. & Regs tit. 12, § 142-2.4; *see Zhong v. Zijun Mo*, 2012 U.S. Dist. LEXIS 99966 (E.D.N.Y. July 18, 2012). "Split shift" is defined as "a schedule of daily hours in which the working hours required or permitted are not consecutive" and "[n]o meal period of one hour or less shall be considered an interruption of consecutive hours." N.Y. Comp. Codes R. & Regs tit. 12, §142-2.17. Stated differently, if an employee's daily working hours are not consecutive and split into two or more shifts (excluding lunch break of one hour or

less), an employee would be entitled to an additional hour of pay at the minimum wage on account of split shift pay. *See, e.g., Pichardo v. Hoyt Transp. Corp.*, 2018 WL 2074160, at *1 (E.D.N.Y. Jan. 31, 2018) (holding that an employee was entitled to split shift pay because his daily working hours were not consecutive with the first shift starting at 5:00 a.m. and ending at 9:40 a.m., then his second shift starting at 2:30 p.m. and ending at 7:00 p.m., with 4 hours and 50 minutes of interval between the first and the second shift).

Appellant argues that she is entitled to split shift pay even though she had an eight-hour, overnight, consecutive shift starting at 10:00 p.m. and ending at 6:00 a.m. the next morning. (A000288.) Appellant arrives at this conclusion by arguing that Section 142-2.17 requires split shift to be calculated on a "calendar day" basis. (A000445, A000411 at 17:23-25, A000412 at 18:1-3.) Appellant argues that instead of considering her working hours as a consecutive eight-hour overnight shift spanning two calendar days, her working hours should be viewed per calendar day basis, with her first shift starting at 12:00 a.m., lasting until 6:00 a.m., and with a 16-hour interval until her second shift which starts at 10:00 p.m. and ends two hours later at 12:00 a.m. *Id.* From this perspective, Appellant asserts, "she was scheduled to leave work and return to work on the same day for many days per week." (D.I. 32 at 4.) In support of her contention that the hours she worked were not consecutive, and that she instead worked separate shifts, Appellant repeatedly relies on her timesheet, which lists the two time frames separately (by calendar day). (*See, e.g.,* Proof of Claim No. 9404, Ex. F (email allegedly demonstrating Claimant's work schedule for the substantial majority of her employment); *see also* A000309-A000310 (two week timecard for weeks beginning September 14, 2019 and September 21, 2019).)

9

As the Bankruptcy Court correctly determined, while Section 142-2.17 is silent[3] on whether the basis for calculating split shift pay is on account of a calendar day or a work day, case law construing this statute and similar state statutes[4] is clear that entitlement to split shift pay is calculated on a work day basis. (*See* Disallowance Order at 4-7.) For example, in *Zhong*, an employee had working hours that spanned across two days such that the employee worked from 12:00 p.m. until 1:45 a.m. 2012 WL 2923292, at *1. Specifically, the employee's first shift lasted approximately five hours and her subsequent shift began more than one hour after the first shift ended. *Id.* at *1-2. In that case, focusing on the fact that the employee's working hours were not consecutive due to the interval between her first and second shift, the court awarded the employee split shift pay. *Id.* at *6. As the Bankruptcy Court observed, in awarding split shift pay, the court did not consider the employee's work hours on a calendar basis. *Id.* If the court in *Zhong* were to accept, as Appellant argues, that entitlement to split shift should be analyzed on a calendar day basis, the court would have characterized the employee's work hours as the first shift starting at

---

[3]  While legislative history of the statute has not been located, the Bankruptcy Court noted that certain members of the New York legislature appeared to agree with its conclusions. Specifically, a "Sponsor Memo" from a proposed Senate Bill seeking to supplement New York's split-shift pay laws from the 2019-2020 Legislative Session described a split-shift as:
> a situation where an employee works a certain number of hours separated by a long break and then must *return* later in the day *to complete his or her work day*. It is unreasonable to keep the employee under the employer's control without pay for periods of time in excess of one hour.

S. B. S7096, 2019-2020 Leg. Sess. (N.Y. 2019), https://www.nysenate.gov/legislation/bills/2019/S7096.

[4]  *See also Securitas Security Services USA, Inc. v. Superior Court*, 197 Cal. App. 4th 115 (Cal. App. Ct. 2011) (considering a similar split shift statute under California law and explaining that "[t]he fact that a single continuous shift happens to begin during one 'work day' and end in another does not result in a 'split shift', [and therefore], employees working uninterrupted overnight shifts on consecutive days do not work a split shift and are not entitled to split shift pay under [California law].")

12:00 a.m. and ending at 1:45 a.m., then her second shift starting 10 hours and 15 minutes later at 12:00 p.m., and ending at 12:00 a.m. However, the court in *Zhong* instead analyzed the employee's working hours on a work day basis, concluding that the employee's first shift was the first five hours starting at 12:00 p.m., followed by a second shift with more than an hour interval. *Id.* Calculating the employee's shift on a work day basis, the court concluded that the employee was entitled to split shift pay.

The Bankruptcy Court also relied upon *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 555 (S.D.N.Y. 2017). There, plaintiffs argued that they were owed damages under section 142-2.4(a)'s spread of hours law. One plaintiff worked an overnight shift from 7:00 p.m. to 4:00 a.m., six to seven days per week. According to the United States District Court for the Southern District of New York, this plaintiff did not "work[] a split shift or [] a shift longer than 10 hours" and was not entitled to spread of hours pay. *Id.* at 556. Appellant criticizes the Bankruptcy Court's mention of *Salustio*, arguing that "there is no discussion on split shift in this case." (D.I. 19 at 9.) While not the focus of that case, the court, in its thorough analysis, addressed the statute noting that a split shift "is a schedule of daily hours in which ***the working hours required*** or permitted ***are not consecutive***," and where the 'split' is greater than one hour." *Id.* at 556 & n.8 (emphasis added). The court considered the claims of several plaintiffs, including plaintiff Vivaldo, who "worked from 7:00 p.m. to 4:00 a.m. (a shift of nine hours)," which "included a break for meals," and claims of a co-plaintiff. Because "neither plaintiff ***worked a split shift*** or worked a shift longer than 10 hours," they were not entitled to relief under the applicable New York statutes. *Id.* at 556 (emphasis added). Important here, and consistent with the Bankruptcy Court's determination, the *Salustio* court recognized that a shift of consecutive hours from 7:00 p.m. to 4:00 a.m., although covering two calendar days, is not a split shift.

Appellant further criticizes the Bankruptcy Court for relying on *Martinez v. SEIU Local 32BJ*, 2019 WL 1259381, *1 (S.D.N.Y. Mar. 19, 2019), which addressed claims asserting breaches of a collective bargaining agreement and the duty of fair representation owed by the employee's union. Appellant argues that this case did not apply the New York statute addressing split shift pay and therefore does not support the Disallowance Order. While *Martinez* does not interpret or construe the applicable New York statute, it is helpful that what the District Court for the Southern District of New York identified as a "split shift" is consistent with other cases supporting the Bankruptcy Court's determination. *See id.* (describing as a split shift "working Monday night from 11:00 pm to 7:00 am, *then returning to work eight hours later to work another eight hour shift from 3:00 pm to 11:00 pm*.") These non-consecutive hours met the definition of a split shift.

The Bankruptcy Court's holding that entitlement to split shift pay is determined on a work day basis, as opposed to a calendar day basis, is adequately supported by case law, and Appellant cites no contrary case supporting her position. The Court finds no error in the Bankruptcy Court's conclusion that Appellant is not entitled to split shift pay based on consecutive 8-hour overnight shifts from 10:00 p.m. until 6:00 a.m.

C.   **The Sales Commission Claim**

The Healon Declaration explained that "[p]ursuant to the Debtor's compensation policies, service representatives were not entitled to earn commissions on the sale of Club memberships []. Sales Commissions could only be earned by employees whose responsibilities included driving the sales of the Debtor's Club's memberships with specific targeted sales goals and metrics. These employees were then subject to minimum threshold hours and sales to earn commissions." (Healon Decl. ¶ 5.) Finding that Appellant had provided no evidence to contradict Ms. Healon's

testimony regarding the policy, the Bankruptcy Court found that Appellant was not entitled to commission on account of her sale of memberships. (Disallowance Order at 8.)

Appellant's main argument on appeal is that the Healon Declaration erroneously describes her role as a "service representative" and "fails to mention that sales commissions were paid to employees holding positions other than that of a sales person (membership counselor), and those positions have different criteria for acquiring sales commissions." (*See* D.I. 19 at 18-21.) Appellant's position was "Service Representative Night," a different role[5] with "duties and responsibilities [that] were far more extensive than that of a service representative," and Appellant contends that in this role she did the "work of many people's positions" as "the only 24 Hour Fitness employee on duty" during the overnight shift, as supported by "the witness statement of Kerry Coleman who worked the night shift from time to time." (*Id.*; *see* Bankr. D.I. 838 at p. 2 of 10.) Appellant asserts that she received sales training and was instructed by her operations manager to begin including her employee number in sales records for the purpose of receiving commission. (D.I. 19 at 21.)

The record, however, supports that the Debtors' internal compensation policy provided that commission on sales of the Club's memberships could only be earned by employees that served in positions responsible for driving sales of the Club's membership with targeted sales goals and metrics. (A000288.) According to Appellant's own admission at trial, she "was not a sales person" and was not subject to the hours and sales standards that salespeople at the Debtor were required to meet. (A000413 at 19:3.) Instead, Appellant was a "Service Representative Night" and, in that

---

[5]   By all accounts, Ms. Hudson "performed her job at the highest level," and "consistently went above and beyond to assist gym members." (Bankr. D.I. 838 at p. 3 of 10). It appears that Appellant also "received advanced managerial training with the expectation of fulfilling the manager position." (*Id.* at p. 4 of 10.)

13

role, Appellant was not responsible for driving the sale of the Club's membership or meeting any threshold target sales goals or metrics. (A000288.)

The Court has little doubt that Appellant, as the only employee working the overnight shift, received training to assist customers with enrolling for the Club's membership and that she did in fact enroll new members during her overnight shifts as part of providing membership services. While Appellant's duties and responsibilities were clearly extensive, Appellant points to no evidence in the record tending to show that she served in a commissionable role during her employment with the Debtor. Accordingly, the Bankruptcy Court properly disallowed the Sales Commission Claim,

### D.   The Disaster Pay Claim

The Bankruptcy Court also held that Appellant was not entitled to additional wages for a lost work day due to a snowstorm that occurred on January 23, 2016. (Disallowance Order at 7.) Appellant submitted an excerpt from what she describes as a copy of the 24 Hour Fitness Employee Handbook, and emphasized a sentence under a section labeled "Disaster Pay Policy." (*See* Bankr. D.I. 838 at 7.) It states that "[d]isaster pay will be paid to team members who were scheduled to work during any time frame the club/office was closed." (*Id.*) As the Bankruptcy Court noted, relevant text of that section also provides the following conditions to the issuance of disaster pay:

> Should a situation arise where there is a serious disruption to the business requiring the closure of one or more clubs ***for an extended period of time***, it is natural for team members to express concern and uncertainty about their pay. The Company has created a Disaster Pay program to help minimize the financial impact to team members. It will be at the company's EVP Human Potential and SVP Club Experience discretion to implement the disaster pay for impacted team members. The Company reserves the discretion and right to amend, modify, or terminate these procedures at any time, with or without notice.

14

*Id.* (emphasis added). The Healon Declaration set forth the Club's historical policy and explained that "the Debtor defined 'extended period' as a period greater than or equal to two days. If a fitness club was closed for a single day due to a disaster, employees that lost their shifts would not be qualified for compensation under the Disaster Pay Policy." (Healon Decl. ¶ 7.) Appellant did not dispute that she only missed a single day of work on January 23, 2016 (A000460), and the Bankruptcy Court found that Appellant had provided no evidence to contradict Ms. Healon's testimony as to the policy.

On appeal, Appellant asserts that "before January 23, 2016 there were times when the club closed for extended periods of time that were less than 2 days due to disaster, and [Appellant] was paid for missing a single shift," but she cites no evidence in the record. (D.I. 19 at 15.) Appellant asserts that "[t]ypically if the club closed for more than several hours and shifts were missed due to a disaster or an act of God," Appellant "was paid for the unforeseen missed shifts"—and she relays a conversation with a manager at a different club in the area, who informed her "that pay was issued for shifts missed due to his club closing on January 23, 2016"—but no evidence in the record is cited. Appellant complains that Ms. Healon's declaration "provided no evidence that historically or during the time in question" that "required a club to be closed for two days or more to implement disaster pay" (*id.* at 16), but absent cross-examination or some evidence to the contrary, Appellant has shown no error in the Bankruptcy Court's determination that Appellant was not entitled to compensation for the single lost work day due to the snowstorm.

### E. The Discrimination Claim

The Reorganized Debtor argues the Discrimination Claim was filed after the General Bar Date and may be disallowed on this ground alone. *See In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 46 (Bankr. D. Del. 2012) (explaining that bar date is a "drop-dead date" for creditors who

15

receive the required notice); *In re Exide Techs.*, 601 B.R. 271, 293 (Bankr. D. Del. 2019) (explaining importance of adhering to a bar date in the administration of a bankruptcy case). Appellant does not argue that she did not receive notice, as she timely filed the Split Shift Claim and the Sales Commission Claim. (*See* A000074 (listing Appellant as a party that received notice of the General Bar Date and a copy of the proof of claim form). Rather, Appellant argues that "any procedural errors or omissions"—presumably, the late filing of this particular claim—are not fatal based on the doctrine of excusable neglect, and her particular circumstances, including the COVID pandemic and medical issues, and the obligation to care for a dying parent, warrant relief from the bar date. Since the Bankruptcy Court determined whether to allow the Discrimination Claim based on its merits, and did not consider this or other procedural objections, the Court need not address Appellant's argument regarding excusable neglect.

In disallowing Appellant's Discrimination Claim, the Bankruptcy Court observed that it rested solely on "[Appellant's] fundamental belief that she was entitled to her wage and commission claims." (Disallowance Order at 8.) Based on its separate determinations that Appellant's Split Shift Claim, Disaster Pay Claim, and the Sales Commission Claim, were not supported by New York law or company policy, and given the absence of other independent facts to support the claims of discrimination and fraud, the Bankruptcy Court concluded that the Discrimination Claim and Fraud Claims must necessarily fail." (*Id.*)

The Discrimination Claim asserted that the Reorganized Debtor's failure to pay Appellant's claims, despite her efforts to collect, rested on discrimination and other improper motivations. (*See, e.g.*, Proof of Claim 27128 (A000121-A000127) at 4-5 (asserting that Debtor "has been sued multiple times for discrimination" and describing violations of her rights as "mean spirited, malicious, injurious.") Appellant did not provide any evidence to support that the alleged

discrimination occurred, and merely asserts that her former employer's denial of membership sales commission and split shift wages was motivated by discrimination. (*See* D.I. 19 at 22 ("The Company's actions and filings display discrimination through micro-aggressions including but not limited to not paying [Appellant] properly through the misapplication of New York State Comp Codes and denying [Appellant] split shift premiums and spread of hours premiums[6] the diminishment of [Appellant's] pay differential, mistreatment on the job, and more."). But as set forth above, Appellant was not entitled to split shift wages pursuant to local laws and internal policies of the Debtor, and Appellant was not denied sales commission; rather, the Appellant was never entitled to a sales commission. Her remaining claims simply find no support in the record. (A000288-A000289.) Accordingly, the Court finds no error in the Bankruptcy Court's disallowance of the Discrimination Claim.

## IV. CONCLUSION

For the reasons explained above, the Court will deny the Motion to Compel and affirm the Disallowance Order. An appropriate order follows.

---

[6] Appellant also argued in her summary judgment briefing that she is entitled to "spread of hours" pay under N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4(a). Because this claim was not alleged in the Hudson Claims, the Bankruptcy Court concluded that it could not be considered by way of a responsive brief. (Disallowance Order at 7 n.41.) Nonetheless, the Bankruptcy Court noted that Appellant was not entitled to spread of hours pay. "The spread of hours in Claimant's workday did not exceed ten hours. Unlike the split shift statute, the spread of hours statute is clear that Claimant's workday should be the focus: 'The *spread of hours* is the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty.'" (*Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.18.) Because Appellant does not challenge the finding that recovery on the basis of "spread of hours" was not asserted in the Hudson Claims, the Court need not consider this issue.